Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

# UNITED STATES DISTRICT COURT
for the

__Southern__ District of __N.Y.__

RECEIVED
SDNY PRO SE OFFICE
2022 MAR 30 AM 10:04

_____ Division

Abdullah Spencer Nimham-EL-DEY

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

see attached

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

) Case No. _____
) *(to be filled in by the Clerk's Office)*
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## COMPLAINT AND REQUEST FOR INJUNCTION

I.  **The Parties to This Complaint**

   A.  **The Plaintiff(s)**

   Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

   | | |
   |---|---|
   | Name | A.S.N.-EL-DEY |
   | Street Address | NIC 150 Hazen St |
   | City and County | East Elmhurst, |
   | State and Zip Code | N.Y., 11370 |
   | Telephone Number | |
   | E-mail Address | |

   B.  **The Defendant(s)**

   Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Pro Se 2 (Rev. 12/16) Complaint and Request for Injunction

Defendant No. 1
- Name
- Job or Title *(if known)*
- Street Address
- City and County
- State and Zip Code
- Telephone Number
- E-mail Address *(if known)*

*See*

Defendant No. 2
- Name
- Job or Title *(if known)*
- Street Address
- City and County
- State and Zip Code
- Telephone Number
- E-mail Address *(if known)*

*Back*

Defendant No. 3
- Name
- Job or Title *(if known)*
- Street Address
- City and County
- State and Zip Code
- Telephone Number
- E-mail Address *(if known)*

Defendant No. 4
- Name
- Job or Title *(if known)*
- Street Address
- City and County
- State and Zip Code
- Telephone Number
- E-mail Address *(if known)*

Board of correction:
2 LaffaYette Room 1221
N.Y., N.Y., 10007

Dept. of environmental conservation
4740 21st, Long Island CitY, N.Y. 11101

Dept. of Buildings
280 BroadwaY, 3rd floor
N.Y., N.Y., 10007

N.Y.C. Health and HosPitals corporation
125 worth Street
N.Y., N.Y., 10013

Dept. of Environmental Protection
59-17 Junction Boulevard, 13th floor
Flushing, N.Y. 11369

Fire Dept.
27-12 kearneY street
Queens, N.Y. 11369

Correction commissioner
75-20 Astoria Blvd
E. Elmhurst, N.Y. 11370

united states
1600 PennsYlvania Ave.
NW, Washington, D.C. 20500

## II. Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case. In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal court jurisdiction? *(check all that apply)*

[✓] Federal question         [ ] Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

### A. If the Basis for Jurisdiction Is a Federal Question

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case. 18 USC § 241 and 242 42 USC § 6901, et seq; Enforcement Act; convention 78 U.N.T.S. 277; U.S. constitution article 1, sec. 10, clse. 1; amendments 1, 6, 8; USCS convention on torture

### B. If the Basis for Jurisdiction Is Diversity of Citizenship

1. The Plaintiff(s)

   a. If the plaintiff is an individual

      The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

   b. If the plaintiff is a corporation

      The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____,

      and has its principal place of business in the State of *(name)* _____.

   *(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2. The Defendant(s)

   a. If the defendant is an individual

      The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. Or is a citizen of *(foreign nation)* _____.

      b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

Or is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

_____

## III. Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the injunction or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur? while in confinement in a cell on Rikers Island for 24 hrs a day from 9,23,2018, to April 21, 2021, and in the dorms, etc. from 2016 - 2018, and 2021- currently. The methane, covid and mice bacterial contaminants are air-borne! Also the same saturates the premises of all the detention centers, in particular N.I.C., a building under ADA!

B.    What date and approximate time did the events giving rise to your claim(s) occur?

from 2016 to date

C. What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

I've been exposed to a weird admixture of a "covid ridden methane mutated mice bacterial contamination" in Rikers Island detention center of N.Y.C., and which has gone denied by the defendants who have the data since 1915 when jails were built.
See attached

## IV. Irreparable Injury

Explain why monetary damages at a later time would not adequately compensate you for the injuries you sustained, are sustaining, or will sustain as a result of the events described above, or why such compensation could not be measured.

As a detainee, i am supposed to have unlimited access to the courts, but suffer continuously from covid ridden methane mutated mice bacterial contamination causing head aches, nausea, stomach cramps, diarhea, nervousness, memory loss, impairments in thinking and reasoning, multiple syncope, disturbances of emotion and behavior and involuntary spasmodics with tearry eyed blurry visions, hence my access to said courts is hindered, and so is the environment as a whole, along with the public amidst climate change world extinction!

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

1) issue an order to shut down Rikers Island; 2) appoint carol werner, costa constantinides, Simon H. Williams and Dr. W. Ian Lipkin to form a study panel oversight of the Lippman commission in the court to enforce ULURP 1 and 2; 3) to conjoin the two Mayoral offices of the "Mayor's office of criminal Justice," and "Rat Reduction Program" to include Rikers Island as target for rat and mice extermination; 4) subpoena the Lippman commission 150-page report to be read into the record along with the UN climate change report; 5) design any remediation plans the study panel deems necessary, and to forward them to the environmental protection Agency under orders to issue to D.O.C. an "environmental remediation"; 6) and i am claiming $300 million in damages! Also ↓

Page 5 of 6

Judging from the here presentation, it must be seen that not only will i suffer immediate and irreparable injury and continuous damages, but everyone else, and the workers as well as the environment as a whole will suffer the same, as the matter gets worse, if i have to wait for a hearing. I am seeking a permanent injunction, and so i pray this Honorable court will schedule a hearing to convert this "Order to show cause and temporary restraining order" to a "preliminary injunction"..."Mandatory injunction."

Also to mandate that <u>inmates and workers</u> are to receive and use masks, hand sanitizers, and gloves, not only for covid concerns, but also for Methane mutated mice bacterial contamination.

Also to expedite Governor Hochul's "Bail reduction" plans, and city Public Advocate and gubernatorial candidate Jumaane williams' "affordable housing" plans, and Prosecutorial misconduct reduction. so as to reduce the back log of cases in light of Bail reduced candidates for affordable housing upon release from such a harmful environment!

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 3, 18, 2022

Signature of Plaintiff: *A.S.N.El-Dey* T.D.C.

Printed Name of Plaintiff: Abdullah Spencer Nimham-El-DEY

### B. For Attorneys

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Street Address
State and Zip Code
Telephone Number
E-mail Address

WE THE PEOPLE OF THE STATE OF NEW YORK EASTERN DISTRICT

①

| | |
|---|---|
| Abdullah Spencer Nimham-EL-DEY<br><br>-v-<br><br>Health and hospitals corp., Environmental Protection Department, Fire Department, Buildings Department, Board of correction, Department of Environmental conservation, correction commissioner, u.s. | **Mandatory preliminary Injunction**<br><br>order to show cause and temporary restraining order<br>(Fed. R. Civ. P. 65(b)) |

To this Honorable court,
upon being housed on Rikers Island in April 2016, i immediately began experiencing a series of migrain headaches, nauseations, stomach cramps, diarheas, nervousnesses, memory loss, impairments in thinking and reasoning, multiple syncopy (T.I.A.), disturbances of emotion and behavior, and involuntary spasmodics, with teary eyed blurry visions! shortly after i developed foot fungus that began a rapid spread internally in 9,23,2018 when i was housed in dorm-3 cell area. The whole time i complained, but was ignored. upon rehousing in cell area. I was denied medical supplies and adequate medical attention. I was forcefully moved from cell area April 21, 2021 due to complaints. while in the cell i was bacterially infected and exposed to methane gas from rats, cockroaches, ants, bees, and other Rikers Island bugs entering cell through

78 U.N.T.S. 277, articles 1,2, and 6; U.S. Constitutional Amendments 1, 6, and 8;

the two windows, and a crack in cell wall large enough for rats to pass through. While laying in my own feces and urine, being medically neglected, and being exposed to the bodily wastes of the methane and bacterially infected bugs and rodents, i suffered torture unknown. I filed this complaint after finally receiving answers to my grievances filed year ago, which is sheer evidence of fraudulent concealment on the part of all the abovementioned defendants in this case.

This is a Mandatory Preliminary Injunction in pursuant of the Resource Conservation and Recovery Act ("RCRA"), 18 USCS §242-Deprivation of rights under color of law; and the law shall stand.

"If there is no speedy trial, due to a cruel and unusual punishment, whereas detainees are held, by force of hand, on a toxic waste dump site covid, methane, and rodent bacteria ridden causing mental and physical impairment, then detainees cannot adequately fight their cases, and such violates the freedom of speech and Religion."

This is a Preliminary Injunction asking the court to issue an order 1) shut down Rikers, 2) appoint Carol Owerner, director emeritus and senior policy fellow at the Environmental and Energy Study Institute, and City councilman Costa Constantinides, chairman of the Environmental Protection committee, to be the only experts overseeing the Lippman Commission in the Court, 3) subpoena the Lippman commission 150-page Report to be read into the record, 4) design any

remediation Plans the study Panel, composed of carol werner and costa constantinides, deems necessary, and i ask that the court make sure said Plans are forwarded to the Environmental Protection agency under an order that said agency shall issue to D.O.C. an "Environmental Remediation" notice, and to co-ordinate with the abovementioned study Panel oversight of the Lippman commission for the enforcement of the first and second ULURP (Uniform Land Use Review Procedure) for four new Jails in Lower Manhattan, Brooklyn, Queens, and the Bronx, and for the rezoning of Rikers Island, the second of which "promises to take Rikers from correction Department control and Prohibit the incarceration of People there."

    I am seeking a Preliminary Injunction as to my claim under RCRA et al. RCRA is a broad remedial environmental statute aimed at controlling the "disposal of solid and hazardous waste in the united states to Protect Public health and the environment (Adkins V. Vim Recycling, inc., 644 F.3d 483, 486 (7th Cir 2011); see Meghrig V. KFC W., inc., 516 U.S. 479, 483, 116 S.Ct. 1251, 134 L.Ed. 2d 121 [1996])." RCRA's Primary Purpose... is to reduce the generation of hazardous waste and to ensure the Proper treatment, storage and disposal of that waste which is nonetheless generated, so as to minimize the Present and future threat to human health and the environment" (quoting 42 U.S.C. § 6902(B)). RCRA gives the district court the Power to "restrain any Person" who has failed to properly dispose of or store such waste, to "order such Person to take such other action as may be necessary," or both (42 U.S.C. § 6972(a)). And RCRA contemplates both "mandatory injunctions,

i.e. those that order a responsible party to "take action" by attending to the cleanup and proper disposal of toxic waste," or "prohibitory injunctions, i.e. those that restrain a responsible party from further violating RCRA" (Meghrig, 516 U.S. at 484).

As with all cases of pipe lines in methane impacted areas, the oil mains and water mains of Rikers Island are no doubt contaminated, and, upon strict analysis, the "tubercles" or "crustal materials" found in the exterior and interior of said pipes will prove methane, and other gases, contamination, and it must be concluded that it is a result of the "waste oils" in the methane Impacted Area, for the same "thick black crust," and "Rotting tar" odor associated with it, that is ever present at such methane gas "waste oil" sites, was found corroding the island tree roots just 25 years after 1915 when detainees and other inmates were housed here on said island.

The court must first order remediation, and order study panel undertake related tasks (see: Pl.'s Mem. supp. Mot. Prelim. Inj. at 37-38, ECF No. 217; see also Pl.'s Mot. Prelim. Inj. EXS. A and B proposed alternative implementing orders). I also ask that the court order the Buildings Department to fund the whole of these efforts (see Pl.'s Mem. supp. Mot. Prelim. Inj. at 38).

## Legal Standard

A party seeking a preliminary injunction must show 1) that its case has some likelihood of success on the merits, and 2) that

it has no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied (Ezell v. City of Chi., 651 F.3d 684, 694 [7th Cir. 2011]). If the moving party meets these threshold requirements, the district court "weighs the factors against one another assessing whether the balance of harms favors the moving party or whether the harm to the nonmoving party or the public is sufficiently weighty that the injunction should be denied." Id. The district court's weighing of the factors is not mathematical in nature; rather, it is "more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." (TY, Inc. v. Jones Group, Inc., 237 F.3d 891, 895-896 [7th Cir. 2001]) (quoting Abbott Labs v. Mead Johnson & Co., 971 F.2d 6, 12 [7th Cir. 1992]). In the case of mandatory injunctions as opposed to prohibitory injunctions, courts often require a greater showing of need for preliminary relief (see Liebhart v. SPX Corp., 917 F.3d 952, 963 [7th Cir. 2019], explaining that mandatory injunctions require "careful consideration of the intrusiveness of the ordered act, as well as the difficulties that may be encountered in supervising the enjoined party's compliance"); Graham v. Med. Mut. of Ohio, 130 F.3d 293, 295 (7th Cir. 1997) (mandatory preliminary writs are ordinarily cautiously viewed and sparingly issued) (quoting Jordan v. Wolke, 593

F. 2d 772, 774 [7th Cir. 1978]); Christie-Spencer Corp. v. Hausman Realty Co., 118 F. Supp. 2d 408, 418 (S.D.N.Y. 2000)(Requiring a "clear showing" that plaintiff is entitled to the relief requested). RCRA, however, specifically envisions the use of mandatory injunctions, see Meghrig, 516 U.S. at 484, and it would be inaccurate to say that relief is "sparingly issued" under this particular remedial scheme. Accordingly, although the court approaches this matter with the caution commensurate with the "extraordinary" nature of the remedy (see: Winter v. NRDC, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L. Ed. 2d 249 [2008]) no burden is required on plaintiff beyond that typically associated with obtaining preliminary injunctive relief.

## Likelyhood of success on the merits

Plaintiff's claim under the abovementioned laws gives the court much to consider in weighing the factors against one another, for Plaintiff's claim under RCRA is brought under the "citizen-suit" provision of 42 U.S.C. § 6972(a)(1)(B). In order to prevail on such a claim, plaintiff must establish that 1) "any person ... including any past or present transporter, or past or present owner or generator, or operator of a treatment, storage, or disposal facility", has 2) "contributed or ... is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste," which 3) "may present an imminent and substantial endangerment to

"are not the source of either the chemicals found on and around the Rikers island water and oil mains or the methane gas and other gases found underneath the Impacted Area, therefore, have not 'contributed' to the hazardous waste at issue in this case," for the city "knowingly and willingly" allowed the avid Imperial wizard of the K.K.K., Francis Lantry, as correction commissioner, during the "second wave" of the K.K.K. in 1915 to covin-glassmenly house inmates on the island in 1915 after "the city first started transfering trash to the island in 1899" by order of the K.K.K. at the end of its "first wave." "Only 90 of its 430 acres — about 20% — is natural land." "The city used landfill to expand the island to about 500 acres, creating more surface area for detention centers while also solving the problem of overflowing waste on the city streets." "where there is decomposing refuse, there is methane gas — a natural byproduct that can be deadly," and "with landfills, things are not able to decompose in a natural way. Things take a long time to [break down]. over the years it can result in a lot of methane being produced because you dont have an oxygen-filled environment, said Carol Werner." Further "Now, a new study out of columbia university is reminding residents of another rodent to be wary of. Mice in New York City carry **disease-causing** bacteria, some of which may be resistant to antibiotics, according to the study. The study, published Tuesday in the Journal mBio, looked at New York city house mice as 'potential reservoirs for pathogenic bacteria' that may spread to humans. Scientists at the center for Infection and Immunity at columbia university's Mailman School of Public Health collected 416 mice during one year from residential buildings throughout the city. These researchers then analyzed the droppings from these mice and discovered that they carried disease-causing bacteria, including E. coli, salmonella, C. difficile and more. Researchers also found evidence of genes exhibiting antimicrobial resistance to antibiotics. A previous study of rats in New York by CII investigators found some of the same pathogens, according

health or the environment." At the Preliminary injunction stage, the Plaintiff need only demonstrate that Plaintiff has a "better than negligible" chance of succeeding on the merits so that preliminary relief is justified (TY, Inc., 237 F. 3d at 897). Due to such fraudulent concealment, all the city and state agencies do not dispute that the methane gas found in the Impacted Area, and contaminated water and oil pipes, are "solid or hazardous wastes." All D.O.C., medical, and civilian staff are notified not to drink the Rikers water (everyone is bringing in their own large jugs of home water or store bought spring water). Inmates are not notified at all about the true status of the situation, as everyone is hush-hush about it. If i didn't overhear medical and civilian staff conjecturing with D.O.C. staff about the severity of said situation in regard to a news report, and if i didn't have an inmate steal the officer's personal news paper (as the pertinent informational articles on said deadly situation is officially cut out as part of official D.O.C. policy to fraudulently conceal the deadly genocidal plan) i could have never traced the source of my own pain and suffering of the neurodegenerative symptoms, along with the other conditions, and could have never seen how the same is responsible for everyone elses medical conditions whether they know it or not, and how the same harms the public and environment! Records show as well that the same city and state agencies do not dispute their status as past and present generator, transporter, and owner of a disposal facility ("Last Year [2018], the city even requested $3 million to repair and upgrade a methane ventilation system at the George R. Vierno center, Buildings Department records show — a clear indication that officials know about the deadly gas, Werner said"). The Honorable court shall not allow the said city and state agencies — as Federal instrumentalities — to covin glassmenly argue that they

④