UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABDULLAH SPENCER NIMHAM EL DEY,

                              Plaintiff,

        -against-

BOARD OF CORRECTION; DEPT. OF
ENVIORNMENTAL CONSERVATION;
DEPT. OF BUILDINGS; N.Y.C. HEALTH
AND HOSPITALS CORPORATION; DEPT.
OF ENVIRONMENTAL PROTECTION;
FIRE DEPT.; CORRECTION
COMMISSIONER; UNITED STATES,

                              Defendants.

1:22-CV-2600 (LTS)

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District Judge:

        Plaintiff Abdullah Spencer Nimham El Dey, who is currently held in the North Infirmary

Command on Rikers Island, filed this *pro se* action invoking the Court's federal question

jurisdiction, and citing "18 U.S.C. § 241 and 242[;] 42 U.S.C. § 6901, *et seq*.; Enforcement Act;

convention U.N.T.S. 277; U.S. Constitution Article I, sec. 10, clse. 1; amendments 1, 6, 8; USCS

Convention on Torture" as the legal bases for his claims. (ECF 2, at 5.) Plaintiff also asserts

claims under the Resource Conservation and Recovery Act, 42 U.S.C. § 6972. He seeks

injunctive relief, including immediate injunctive relief via a temporary restraining order and a

preliminary injunction, as well as damages.

        By order dated May 20, 2022, the Court granted Plaintiff's request to proceed *in forma*

*pauperis* ("IFP"), that is, without prepayment of fees.[1]

---

[1] Prisoners are not exempt from paying the full filing fee, even when they have been
granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within 60 days of the date of this order.[2]

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in

---

[2] The Court notes that on May 31, 2022, the Court recognized Plaintiff as barred, under the "three-strikes" provision of the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(g), from filing federal civil actions as a prisoner IFP. *Nimham El Dey v. DOC*, ECF 1:22-CV-4028, 3 (S.D.N.Y. May 31, 2022). The filing bar became effective on March 1, 2022, when Plaintiff earned his third strike. *See Coleman v. Tollefson*, 575 U.S. 532, 537-39 (2015); *Nimham El Dey*, ECF 1:22-CV-4028, 3 (listing strikes). Plaintiff signed the present complaint on March 18, 2022, and the envelope in which it was delivered was postmarked March 22, 2022. Thus, Plaintiff filed this action after the Section 1915(g) filing bar took effect. There is, however, an exception to this filing bar when a prisoner files a federal civil action while he "is under imminent danger of serious physical injury." § 1915(g). Plaintiff alleges that, as a result of the conditions of confinement in his Rikers Island facility – the basis for his claims in this action – he is suffering from "headaches, nausea, stomach cramps, diar[r]hea, nervousness, memory loss impairments in thinking and reasoning, multiple syncope disturbances of emotion[s] and behavior and involuntary spasmodics [sic] with tea[r]y eyed blurry visions." (ECF 2, at 9.) Thus, the Court granted Plaintiff IFP status under the exception to the Section 1915(g) filing bar.

original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits –

to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the

pleader is entitled to relief.

Under Rule 8, a complaint must include enough facts to state a claim for relief "that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially

plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that

the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In

reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.*

But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action,"

which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After

separating legal conclusions from well-pleaded factual allegations, the Court must determine

whether those facts make it plausible – not merely possible – that the pleader is entitled to relief.

*Id*. at 679.

## BACKGROUND

Plaintiff sues the following defendants: (1) the New York City Board of Correction;

(2) the New York State Department of Environmental Conservation; (3) the New York City

Department of Buildings; (4) the New York City Health & Hospitals Corporation (now known as

NYC Health + Hospitals); (5) the New York City Department of Environment Protection; (6) the

New York City Fire Department; (7) the New York City Correction Commissioner; and (8) the

United States of America.

Plaintiff alleges that, while he has been held on Rikers Island, he has "been exposed to a

weird []mixture of a 'covid ridden methane mutated mice bacterial contamination' . . . , [] which

has gone denied by the defendants who have the data since 1915 when jails were built." (ECF 2,

3

at 9.) He asserts that this contamination causes him "headaches, nausea, stomach cramps, diar[r]hea, nervousness, memory loss, impairments in thinking and reasoning, multiple syncope disturbances of emotion and behavior and involuntary spasmodics [sic] with tea[r]y eyed blurry visions," which hinders his access to the courts and harms the environment. (*Id.*)

Plaintiff seeks the following relief: (1) the "shutting down" of Rikers Island; (2) the Court's appointment of "Carol Werner, Costa Constantinides, Simon H. Williams[,] and Dr. W. Ian Lipkin to form a study panel oversight of the Lippman Commission . . to enforce ULURP 1 and 2"; (3) the "conjoin[ing] [of] the two [m]ayoral offices of the 'Mayor's Office of Criminal Justice,' and 'Rat Reduction Program' to include Rikers Island as [a] target for rat and mice extermination"; (4) the "subpoena[ing] [of] the Lippman Commission['s] 150-page report . . . into the record along with the UN climate change report"; (5) the "design[ing] [of] any remediation plans the study panel deems necessary and [the] forward[ing] [of] them to the [E]nvironmental Protection Agency under orders to issue to [the New York City Department of Correction] an 'environmental remediation'"; and (6) the awarding of $300 million in damages. (*Id.*)

## DISCUSSION

While Plaintiff cites international agreements, federal constitutional provisions, and federal statutes as the legal bases for his claims, the Court understands Plaintiff's complaint as asserting citizen-suit claims under the Resource Conservation and Recovery Act ("RCRA"), as well as claims of constitutional violations under 42 U.S.C. § 1983, against multiple New York City agencies, one New York State agency, and the New York City Correction Commissioner, arising from the presence of methane gas and vermin on Rikers Island. He also appears to assert claims under Section 1983 that he has been denied adequate medical treatment. He further seems to assert citizen-suit claims under the RCRA against the United States of America. In addition,

the Court understands Plaintiff's complaint as seeking the criminal prosecution of at least some

of the defendants.

## A.      Private prosecution

Plaintiff's claims in which he seeks the criminal prosecution of at least some of the

defendants must be dismissed. Plaintiff cannot initiate the prosecution of an individual or other

entity in this court because "the decision to prosecute is solely within the discretion of the

prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Plaintiff also cannot direct

prosecutors to initiate a criminal proceeding against any defendant because prosecutors possess

discretionary authority to bring criminal actions and they are "immune from control or

interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87

(2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the criminal prosecution of

others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), the Court dismisses, for lack of

subject matter jurisdiction, any claims, including any under 18 U.S.C. §§ 241 or 242, in which

Plaintiff seeks the criminal prosecution of any of the defendants, *see* Fed. R. Civ. P. 12(h)(3);

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III

standing, a [federal] court has no subject matter jurisdiction to hear [his] claim.") (internal

quotation marks and citation omitted).

## B.      The United States of America

The Court also dismisses Plaintiff's claims against the United States of America. The

doctrine of sovereign immunity bars federal courts from hearing all suits against the United

States of America, except where sovereign immunity has been waived. *United States v. Mitchell*,

445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). The

RCRA "is a comprehensive environmental statute that governs the treatment, storage, and

disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996).

"Its purpose is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, so as to minimize the present and future threat to human health and the environment." *Prisco v. A&D Carting Corp.*, 168 F.3d 593, 608 (2d Cir. 1999) (quoting *Meghrig*, 516 U.S. at 483) (internal quotation marks omitted); 42 U.S.C. § 6902(b). "In furtherance of that goal, [the] RCRA contains a private attorney-general provision allowing citizen lawsuits for injunctive relief [and civil penalties] in certain circumstances."[3] *Prisco*, 168 F.3d at 608 (citing 42 U.S.C. § 6972).

The United States of America has waived its sovereign immunity with regard citizen suits made against it under the RCRA, but only as to liability with respect to injunctive relief and coercive fines imposed on it to induce its compliance with injunctions or other court orders issued to modify its behavior prospectively; it has not waived its sovereign immunity as to

---

[3] Among those who may be liable under the RCRA's citizen-suit provision are:

> any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B). Under this provision of the RCRA:

> [t]he district court for the district in which the alleged violation occurred . . . shall have jurisdiction . . . to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste . . . , to order such person to take such other action as may be necessary, . . . and to apply any appropriate civil penalties under [42 U.S.C. §] 6928(a) and (g).

§6972(a).

liability with respect to punitive fines imposed on it for past violations of the RCRA. *See*

§ 6972(a); *DOE v. Ohio*, 503 U.S. 607, 615-20 (1992).

To state a claim under Section 6972(a)(1)(B), a plaintiff must allege facts showing that:

(1) the defendant was or is a generator or transporter of solid or hazardous waste or owner or operator of a solid or hazardous waste treatment, storage or disposal facility, (2) the defendant has contributed or is contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous waste, as defined by [the] RCRA, and (3) that the solid or hazardous waste in question may pose an imminent and substantial endangerment to health or the environment.

*Prisco*, 168 F.3d at 608.[4]

---

[4] Under the RCRA:

[1] The term "disposal" means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters. . . .
[2] The term "hazardous waste" means a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may –
(A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
(B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.
[3] The term "hazardous waste generation" means the act or process of producing hazardous waste.
[4] The term "hazardous waste management" means the systematic control of the collection, source separation, storage, transportation, processing, treatment, recovery, and disposal of hazardous wastes. . . .
[5] The term "municipality" . . . means a city, town, borough, county, parish, district, or other public body created by or pursuant to State law, with responsibility for the planning or administration of solid waste management. . . .
[6] The term "person" [includes a] . . . corporation (including a government corporation), . . . municipality, . . . political subdivision of a State, . . . and shall include each department, agency, and instrumentality of the United States. . . .
[7] The term "solid waste" means any garbage, refuse, sludge from a waste treatment plant, water supply treatment plant, or air pollution control facility and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, and agricultural operations, and from community activities, but does not include solid or dissolved

To the extent that Plaintiff asserts claims under this provision of the RCRA against the United States of America, Plaintiff has alleged no facts showing that the United States of America is or was involved with the generation or transportation of any solid or hazardous waste on or to Rikers Island, or is or was the owner or operator of a solid or hazardous waste treatment, storage, or disposal facility that is or was connected to Rikers Island. The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court also dismisses any remaining claims Plaintiff asserts against the United States of America, under the doctrine of sovereign immunity, because Plaintiff does not show that the United States of America has waived its sovereign immunity as to such claims. The Court dismisses these remaining claims for lack of subject matter jurisdiction, and because Plaintiff seeks monetary relief from a defendant that is immune from such relief. *See* Fed. R. Civ. P. 12(h)(3); *see also* § 1915(e)(2)(B)(iii) (allowing for *sua sponte* dismissal of an IFP action that "seeks monetary relief against a defendant who is immune from such relief").

---

material in domestic sewage, or solid or dissolved materials in irrigation return flows or industrial discharges. . . .

[8] The term "storage", when used in connection with hazardous waste, means the containment of hazardous waste, either on a temporary basis or for a period of years, in such a manner as not to constitute disposal of such hazardous waste.

[9] The term "treatment", when used in connection with hazardous waste, means any method, technique, or process, including neutralization, designed to change the physical, chemical, or biological character or composition of any hazardous waste so as to neutralize such waste or so as to render such waste nonhazardous, safer for transport, amenable for recovery, amenable for storage, or reduced in volume. Such term includes any activity or processing designed to change the physical form or chemical composition of hazardous waste so as to render it nonhazardous.

42 U.S.C. § 6903(3), (5), (6), (7), (13), (15), (27), (33), (34).

**C.      The New York State Department of Environmental Conservation**

The Court further dismisses Plaintiff's claims under the RCRA and Section 1983 against the New York State Department of Environment Conservation ("NYSDEC"), a New York State agency, under the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity. . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

Congress has not abrogated the States' immunity for claims under the RCRA or Section 1983, *see Farricielli v. Holbrook*, 215 F.3d 241, 245 (2d Cir. 2000) (the RCRA); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990) (Section 1983), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977) (Section 1983); *see also Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 216 (E.D.N.Y. 2019) (RCRA claims against the State of New York and NYSDEC barred by the Eleventh Amendment), *appeal dismissed by stipulation*, No. 19-1060, 2020 WL 1933676 (2d Cir. Apr. 15, 2020) (slip op.); *Murtaugh v. New York*, 810 F. Supp. 2d 446, 469-73 (N.D.N.Y. 2011) (same as to the State of New York), *appeal dismissed*, No. 14-233 (2d Cir. Mar. 31, 2014) (dismissal effective Apr. 14, 2014). NYSDEC, an agency of the State of New York, is an arm of that State and enjoys Eleventh Amendment immunity. *See Kravtsov v. Town of*

*Yorktown*, No. 19-CV-5232, 2019 WL 3714945, at *3 (S.D.N.Y. Aug. 7, 2019); *Long Island Pure Water Ltd.*, 375 F. Supp. 3d at 216.

Accordingly, the Court dismisses Plaintiff's claims under the RCRA and Section 1983 against NYSDEC under the doctrine of Eleventh Amendment immunity, for lack of subject matter jurisdiction and because Plaintiff seeks monetary relief from a defendant that is immune from such relief. Fed. R. Civ. P. 12(h)(3); *Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction."); *Atl. Healthcare Benefits Trust*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction."); *see* § 1915(e)(2)(B)(iii).

**D.     New York City-agency defendants**

The Court dismisses Plaintiff's claims against the New York City Board of Correction ("BOC"), the New York City Department of Buildings ("DOB"), the New York City Department of Environment Protection ("DEP"), and the New York City Fire Department ("FDNY") because, as agencies of the City of New York, these defendants are not entities that may be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."); *see also Cole v. City of New York*, No. 19-CV-8376, 2020 WL 3618422, at *3 (S.D.N.Y. July 2, 2020) (DEP is not a suable entity); *Pizzaro v. Ponte*, No. 17-CV-4412, 2019 WL 568875, at *4 (S.D.N.Y. Feb. 11, 2019) (same as to BOC); *Olabopo v. Gomes*, No. 13-CV-5052, 2016 WL 5477586, at *3 (E.D.N.Y. Sept. 29, 2016) (same as to DOB and FDNY).

The Court therefore dismisses Plaintiff's claims against these defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court understands Plaintiff's complaint as asserting claims under Section 1983 and the RCRA against the City of New York.

**E.     The City of New York and NYC Health + Hospitals**

**1.     Claims under Section 1983**

When a plaintiff sues a municipality, such as the City of New York, or other local government entity, such as NYC Health + Hospitals,[5] under Section1983, it is not enough for the plaintiff to allege that one of the municipality's or other local government entity's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality or other local government entity itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality or other local government entity, the plaintiff must allege facts showing: (1) the existence of a municipal or local government entity policy, custom, or practice; and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403

---

[5] NYC Health + Hospitals, formerly known as the New York City Health & Hospitals Corporation, is a public benefit corporation created by New York State law, and may be sued. *See* N.Y. Unconsol. Laws §§ 7384(1), 7385(1). It provides medical care to prisoners in the custody of the New York City Department of Correction, including those held in Rikers Island facilities.

(1997). This standard has been applied to claims under Section 1983 brought against NYC

Health + Hospitals. *Rookard v. Health & Hosp. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983).

    Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New

York or NYC Health + Hospitals has caused a violation of his federal constitutional rights. The

Court grants Plaintiff leave to amend his complaint to allege facts to state a claim under Section

1983 against the City of New York or NYC Health + Hospitals.[6]

### 2.      Claims under the RCRA

    The Court understands Plaintiff's complaint as asserting claims under the RCRA,

specifically, under Section 6972(a)(1)(B), against the City of New York and NYC Health +

Hospitals.

    Plaintiff alleges that since 1915, methane gas has been emanating from Rikers Island

because of the decomposition of trash used for landfill. He also alleges that "all the city and state

agencies do not dispute that methane gas found in the [i]mpacted [a]rea, and contaminated water

and oil pipes, are 'solid or hazardous wastes.'" (ECF 2, at 20.) Plaintiff further alleges that all

correction "medical, and civilian staff are notified not to drink the Rikers [Island] water

(everyone is bringing in their own large jugs of home water, or store bought spring water).

Inmates are not notified at all about the true status of the situation, as everyone is hush-hush

about it." (*Id.*) He asserts that if he did not:

> overhear medical and civilian staff conjecturing with [correction] staff about the
> severity of said situation in regard to a news report, and if [he] didn't have an
> inmate steal the officer's personal newspaper (as the pertinent informational
> articles on said deadly situation is officially cut out as part of official [New York
> City Department of Correction] policy to fraudulently conceal the deadly

---

[6] If Plaintiff asserts claims against the City of New York or NYC Health + Hospitals in
his amended complaint, he must name the City of New York or NYC Health + Hospitals as a
defendant in the caption of his amended complaint.

genocidal plan)[,] [he] could have never traced the source of [his] own pain and
suffering. . . .

(*Id.*) Plaintiff attaches to his complaint, among other newspaper articles, articles from *The New
York Daily News* and *Metro.us*, discussing the presence, on Rikers Island, of methane gas and of
vermin that carry antibiotic-resistant bacteria. (ECF 2-1, at 33-34; ECF 2-2, at 3-4.)

With respect to Plaintiff's claims under Section 6972(a)(1)(B) against the City of New
York and NYC Health + Hospitals, the Court assumes, for the purpose of this order, that methane
gas is "solid or hazardous waste . . . [that may] pose an imminent and substantial endangerment
to health or the environment." *Prisco*, 168 F.3d at 608. Plaintiff has not, however, alleged
sufficient facts to show that either the City of New York or NYC Health + Hospitals:

"(1) . . . was or is a generator or transporter of solid or hazardous waste or owner or operator of a
solid or hazardous waste treatment, storage or disposal facility, [or] (2) . . . has contributed or is
contributing to the handling, storage, treatment, transportation, or disposal of solid or hazardous
waste, as defined by [the] RCRA."[7] *Id.* Accordingly,  the Court grants Plaintiff leave to amend

---

[7] "[C]ourts . . . have routinely dismissed the types of bare allegations made by Plaintiff
here regarding methane gas exposure at Rikers Island." *Youmans v. City of New York*, 14 F. Supp.
3d 357, 362 (S.D.N.Y. 2014) (collecting cases); *see Wingate v. Quattrochi*, No. 14-CV-2666,
2014 WL 2091245, at *4 (E.D.N.Y. May 15, 2014) (holding that a prisoner's "claim that Rikers
Island is located 'on [a] contaminated landfill' which emits methane gas that has caused him
some unidentified harm is conclusory.") (citation omitted, alteration in original), *appeal
dismissed¸* No. 14-2257 (2d Cir. Oct. 3, 2014); *Gladden v. City of New York*, No. 12-CV-7822,
2013 WL 4647193, at *2-3 (S.D.N.Y. Aug. 29, 2013) ("The Complaint is premised entirely on an
unidentified internet posting that apparently asserts the presence of methane on Rikers Island
from 1987 to 2002. Plaintiff makes no factual allegation that connects his purported injuries to
methane exposure. . . . Plaintiff has set forth only conclusory allegations concerning a cover-up
to conceal information about the alleged methane leaks at Rikers Island.") (citation omitted);
*Loccenitt v. City of New York*, No. 11-CV-5651, 2012 WL 3822701, at *4 (S.D.N.Y. July 30,
2012) ("Plaintiff states that Rikers Island was built on a landfill . . . , and that an environmental
report has shown that Rikers Island was built on a hazardous waste dump site. . . . Both
statements, even if true, do not automatically mean conditions on Rikers Island are currently
harmful. . . . [A]ll the complaint offers are plaintiff's *ipse dixit* pronouncements. Such conclusory
statements do not satisfy *Twombly*.), *report & recommendation adopted*, 2012 WL 3822213
(S.D.N.Y. Sept. 4. 2012); *Cepeda v. Bloomberg*, No. 11-CV-2914, 2012 WL 75424, at *2

his complaint to allege facts to state a claim under the RCRA against the City of New York or NYC Health + Hospitals.

### F.   Correction Commissioner

#### 1.   Personal involvement

The Court understands Plaintiff's claims against the Correction Commissioner as brought under Section 1983. To state a claim under that statute against an individual defendant, a plaintiff must allege facts showing the individual defendant's direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks and citation omitted). An individual may not be held liable under Section 1983 solely because that individual employs or supervises a person who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official. . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

---

(S.D.N.Y. Jan. 4, 2012) ("The *Daily News* article is not an adequate factual basis for [the plaintiff's] claim that toxins have harmed him. It simply reports about another lawsuit where corrections officers made certain allegations against the City of New York. . . . The environmental study reports only that Rikers [Island] had previously been a hazardous waste disposal site and that construction of a power station could generate waste materials. The study does not suggest that current conditions [on] Rikers [Island] are harmful. Similarly, articles describing the deleterious effects of various toxins are unrelated to conditions at Rikers [Island].").

Plaintiff does not allege any facts showing that the Correction Commissioner – the only individual named as a defendant in this action – has been personally involved in any of the alleged violations of Plaintiff's federal constitutional rights. The Court grants Plaintiff leave to file an amended complaint in which he names individuals as defendants and alleges facts showing how each of those individuals has been personally involved with the alleged violations of his federal constitutional rights.

### 2.  Conditions of confinement

The Court understands the complaint as asserting claims under Section 1983 about Plaintiff's conditions of confinement on Rikers Island. Plaintiff does not specify, however, whether he is a pretrial detainee or a convicted prisoner. Plaintiff's custody status is important because, if he is a pretrial detainee, these claims arise under the Due Process Clause of the Fourteenth Amendment; if he is a convicted prisoner, these claims arise under the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 536 n.16 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Regardless of whether Plaintiff is a pretrial detainee or convicted prisoner, he must satisfy the following two elements to state a conditions-of-confinement claim under Section 1983: (1) an "objective" element, which requires a showing that the challenged conditions of confinement are sufficiently serious, and (2) a "mental" element, which requires a showing that a defendant officer has acted with at least deliberate indifference to the challenged conditions. *Darnell*, 849 F.3d at 29.

The objective element of a conditions-of-confinement claim is the same for pretrial detainees and convicted prisoners – "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and *LaReau v. MacDougall*, 473 F.2d 974,

978 (2d Cir. 1972)); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). "[P]rison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions."[8] *Walker*, 717 F.3d at 125 (internal quotation marks omitted).

The second element – the "subjective" or "mental" element – varies depending on whether a plaintiff is a pretrial detainee or convicted prisoner. A convicted prisoner must allege that a correction official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Darnell*, 849 F.3d at 32 (quoting *Farmer*, 511 U.S. at 837). A pretrial detainee must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. The mere negligence of an official is not a basis for a claim of a federal constitutional violation under Section 1983.[9] *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

---

[8] With respect to a claim that officials have denied a prisoner adequate medical treatment, the objective element of such a conditions-of-confinement claim requires that the prisoner is or was suffering from a sufficiently serious medical or mental-health condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)) (internal quotation marks omitted).

[9] Allegations of medical malpractice or the negligent failure to provide adequate medical or mental-health care do not state a viable Section 1983 claim that a prisoner was denied adequate medical or mental-health care. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Chance*, 143 F.3d at 703.

Plaintiff alleges many harmful conditions of confinement, not the least of which is the presence of methane gas, which may satisfy the objective element to this type of Section 1983 claim. He has not alleged sufficient facts, however, showing how the Correction Commissioner – the only individual named as a defendant – has been deliberately indifferent to his conditions of confinement.[10] The Court therefore grants Plaintiff leave to file an amended complaint to allege facts sufficient to state a conditions-of-confinement claim under Section 1983. Plaintiff must specify whether he is a pretrial detainee or a convicted prisoner, and allege facts satisfying both the objective and subjective elements to state such a claim; he must specify how each individual defendant named in his amended complaint has been deliberately indifferent to a serious and unreasonable risk to his health or safety.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "'should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under the RCRA or

---

[10] This includes Plaintiff's claims arising from the alleged denial of adequate medical treatment.

Section 1983 against the City of New York, NYC Health + Hospitals, or individual defendants, the Court grants Plaintiff 60 days' leave to amend his complaint to detail those claims.

In addition to naming the City of New York or NYC Health + Hospitals as a defendant in his amended complaint's caption and statement of claim, Plaintiff must name as defendants those individuals who were allegedly involved in the deprivation of his federal rights.[11] If Plaintiff does not know the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the caption and the body of the amended complaint.[12]  The naming of "John Doe" or "Jane Doe" defendants, however, does *not* toll the limitations periods governing this action, and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" or "Jane Doe" defendants, and amending his complaint to include the identity of any "John Doe" or "Jane Doe" defendants before the applicable limitations periods expire. Should Plaintiff seek to add a new claim or party after the applicable limitations periods have expired, he must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

In the "Statement of Claim" section of his amended complaint, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, he must provide it. Plaintiff should include all of the information in the amended complaint that he wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

---

[11] The caption is located on the front page of the amended complaint. Each defendant must be named in its caption. Plaintiff may attach additional pages to the caption if there is not enough space to list all of the defendants. If Plaintiff needs to attach an additional page to list all defendants, he should write "see attached list" on the first page of the amended complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

[12] For example, a defendant may be identified as: "Correction Officer John Doe #1 on duty August 31, 2021, at the Sullivan Correctional Facility clinic, during the 7 a.m. to 3 p.m. shift."

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated federal law or violated Plaintiff's federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

The Court dismisses all of Plaintiff's claims, with the exception of those brought under the RCRA or 42 U.S.C. § 1983 against the Correction Commissioner, the New York City Health & Hospitals Corporation, and the City of New York. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii); Fed. R. Civ. P. 12(h)(3).

The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 1:22-CV-2600 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time, and the Court will not rule on Plaintiff's request for immediate injunctive relief until after he files an amended complaint in compliance with this order. If Plaintiff fails to comply within the time

allowed, and he cannot show good cause to excuse such failure, the Court will dismiss the remainder of Plaintiff's claims for failure to state a claim on which relief will be granted, *see* § 1915(e)(2)(B)(ii), and will deny his request for immediate injunctive relief as moot.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   June 22, 2022
         New York, New York

                          /s/ Laura Taylor Swain
                          LAURA TAYLOR SWAIN
                          Chief United States District Judge